## HIBBARD *v.* RUSSELL.

Demand and notice may be waived by an indorser without writing, and may be proved by direct evidence or inferred from the language and conduct of the party.

An allegation of demand and notice is proved by evidence of a waiver of it.

A witness who states the conversation of a party, shall not state also what he understood the party meant by the words he used.

ASSUMPSIT against the defendant upon his liability as indorser of a promissory note. The substance of the declaration is given in the opinion of the court.

The defendant pleaded the general issue.

To maintain the issue on his part, the plaintiff introduced C. Ainsworth as a witness, who testified that on the 17th day of February 1841 the plaintiff and defendant came into his office and wished to get a conveyance made of Hibbard's house to Russell the defendant, for which Russell was to pay Hibbard the plaintiff $2500, and he did pay a portion of it by a note against W. Cobleigh and others, and a portion by the note now the subject of this controversy, signed by Truman Stevens & Co., payable to Russell or his order, and by him indorsed in blank. He further testified that after the writings were made and Russell had gone out of the office, Hibbard inquired if Russell would be liable as indorser; witness told Hibbard that Russell would not unless the plaintiff should make demand of payment of Truman Stevens & Co., and in case of non-payment by them, notify Russell therof; or unless he could get Russell to waive demand and notice on the back of the note. About five or ten minutes after Russell went out of the office, Hibbard went out; and he and Russell came back into the office, and then Hibbard told Russell what the witness had said to him in regard to the demand and notice, and requested Russell to waive demand and notice by writing over his name on the back

of the note. Russell declined doing it; but said that he had agreed with T. Stevens & Co., the signers, to wait till the then next June for the payment of said note, and requested Hibbard to wait till that time, and not to make demand of payment or give notice; and said that if they did not pay the note then, he would pay it, or would consider himself holden as indorser; and that it should be paid the same as if he waived demand and notice on the back of the note, or used language to that effect. He further testified, that the indorsement upon the note of the name of the defendant is in the hand-writing of the defendant.

John Farr, a witness called by the plaintiff, testified that in the latter part of 1842 (he thought that was the time), in the hay-scale office in the brick store at Littleton, the plaintiff and defendant had a conversation about a note against Truman Stevens & Co. and indorsed by Russell. The recollection of the witness was not distinct as to the words used. Hibbard called on Russell for payment of the note. Russell said it did not belong to him to pay it, and that Hibbard must call on Truman Stevens & Co., or to that effect. Hibbard said that he had done that until he was tired, or that in effect, and could not get the pay. Russell said if Hibbard could not get it of them, that he was good for it, or had got it to pay, using one or the other of those expressions. Truman Stevens & Co. were not considered solvent. The defendant's counsel then proposed asking the witness, if he understood that Russell intended to pay the note; and upon the plaintiff's objecting to the inquiry, the same was ruled out by the court, and the defendant's counsel objected to the ruling.

The court being of opinion that upon the foregoing evidence the plaintiff was entitled to recover, and neither party desiring to submit any fact to the jury, a verdict was taken by consent for the plaintiff, subject to the questions arising upon the exceptions of the defendant to the aforesaid opinion.

*Bellows*, for the defendant. We say 1. That what took place in Mr. Ainsworth's office after the few minutes separation, was part of the original transaction, and the contract of indorsement could not be varied by it. *Barry & a. v. Morse*, 3 N. H. 132. But if otherwise, the fair import of the testimony of C. Ainsworth is, that Hibbard need not call on the makers of the note until June, and that the defendant would notwithstanding hold himself liable as *indorser*.

Russell intended to be held as indorser, and in that capacity alone. He expressly refuses to waive demand and notice on the note, but agreed that Hibbard need not call upon the makers until June, and he would stand holden as indorser still.

Here was a case of a note then due, and the plaintiff would under ordinary circumstances be bound to make demand immediately, and give notice. The defendant agreed that he need not do it until June, and he would still be holden as indorser. But he did not waive demand and notice. That he refused expressly; and the burden is on the plaintiff to prove clearly the waiver. He said he had agreed not to call on the makers until June, and he would not require the plaintiff to do it before. From this no waiver can be presumed.

The demand and notice being part of the contract of indorsement, it will not be considered as waived unless an express agreement is shown. To be holden as indorser, necessarily includes the idea of demand and notice. But if the agreement had been to pay absolutely, it is not clear that it would be a waiver of demand and notice. Chitty on Bills and Notes, 433, 434.

As to the testimony of John Farr. If it amount to a promise by Russell, it can not operate, for it does not appear that he was acquainted with the *laches*. On cross-examination Farr was requested to state his understanding of Russell's remarks, as it would have a tendency to show

what the remarks actually were, and we hold that the question was proper.

*Perley,* for the plaintiff. This verdict was taken by consent for the plaintiff, and must stand if there was competent evidence for the jury to find such a verdict.

I. Was there a waiver of demand and notice?

1. The indorsement of the note was complete; the plaintiff was proceeding to make demand and give notice, and forbore at the request of the defendant, and on his undertaking to be liable in the same manner as if he had waived demand and notice on the back of the note. The evidence was certainly competent for the jury to find a verbal agreement to waive demand and notice. And a verbal waiver is sufficient. *Whitney* v. *Abbott,* 5 N. H. 378; *Fuller* v. *McDonald,* 8 Greenl. 213.

*Barry* v. *Morse,* 3 N. H. 132, is not in point. If this agreement to waive demand and notice was on condition that the plaintiff should wait till June then next, that condition was performed.

2. The testimony of Farr was competent to prove a subsequent waiver of demand and notice. *Wood* v. *Brown,* 1 Starkie 217; *Ladd* v. *Kenney,* 2 N. H. 340. That the plaintiff had made demand and given notice. *Gunson* v. *Metz,* 1 Barn. & Cress. 193.

II. The evidence that the witness "understood that Russell intended to pay the note," was properly rejected.

1. The question was general, what the witness understood, not what he understood *from* the *conversation.*

2. Nor was the question, "what the witness understood from the conversation was the agreement or admission of Russell," as in *Eaton* v. *Rice,* 8 N. H. 378. The witness had stated the substance of the conversation; the question amounted to no more than this: Whether the witness from his knowledge of the man and the circumstances of the case, thought that the defendant meant to keep his en-

gagement like an honest man, or cheat the plaintiff out of his debt?

III. There is no variance between the plaintiff's declaration and the proof. The defendant's subsequent admission of his liability was competent to prove a demand and notice as alleged in the first count. The evidence shows a waiver as alleged in the third count.

Proof of waiver will support an allegation of demand and notice, as alleged in the first count. *Taunton Bank* v. *Richardson,* 5 Pick. 436. The evidence was admissible under the money count. *State Bank* v. *Hurd,* 12 Mass. 172; *Ellsworth* v. *Brewer,* 11 Pick. 316; *Hodges* v. *Holland,* 16 Pick. 395; *Olcott* v. *Rathbone,* 5 Wend. 490.

WOODS, J. This is an action by an indorsee of a promissory note against the indorser. The first count sets forth the making of the note on the 16th day of November 1840, payable to the defendant, its indorsement and delivery for value by him to the plaintiff, its presentation to the makers for payment, their refusal, and notice on the same day to the defendant.

The second count alleges, that on the 17th day of February 1841 the plaintiff having the note in his possession, which the defendant had for value on that day indorsed and delivered to him, in consideration that the plaintiff at the defendant's request would forbear and give day of payment to the makers till the first day of June next following, the defendant promised to pay him the contents; that he did forbear, &c., of which the defendant had notice.

The third count alleges the making of the note on the 1st day of November 1840, payable to the defendant; that he on the 17th day of February 1841, indorsed and delivered the same to the plaintiff, and afterward on the same day waived demand on the makers, and notice, whereby he became liable. The money counts are added.

It was proved, that on the 17th day of February 1841,

the defendant, having the note described, indorsed and delivered it for value to the plaintiff on the same day. That after the transaction, within a few minutes, the plaintiff having learned by inquiring of Mr. Ainsworth the witness the effect of the indorsements, the two parties came together, and the plaintiff requested the defendant to waive the demand and notice, by an indorsement to that effect upon the note. This Russell declined to do; but said he had agreed to wait on the makers till the following June, and requested the plaintiff to wait also, and not to make demand of payment or give notice; and said that if the makers did not pay the note he would pay it, or would consider himself holden as indorser, and that it should be paid the same as if he waived demand and notice on the back of the note.

This was on the day on which the note was indorsed and delivered to the plaintiff, and while he had the undoubted means, by pursuing the course usual in such cases, of fixing beyond any question the liability of the defendant. In consequence of the agreement of the defendant to waive the demand and notice, and by reason of his promise to pay the note if the plaintiff would forbear the demand for a time limited, the plaintiff omitted to make it, as he might and, it is to be presumed, would otherwise have done; and the question is, whether the defendant is bound to pay the note.

It is perfectly settled, that a waiver of demand and notice need not be in writing, and that the modification that such waiver gives to the contract, created by the indorsement and delivery of the negotiable paper, is not such as is by the statute of frauds required to be put in writing; that no fixed verbal formula is necessary to constitute such a waiver, but that like any other fact it may be proved by direct evidence, or inferred from expressions and conduct of the parties. *Fuller* v. *McDonald*, 8 Maine

213; *Widgery* v. *Monroe*, 6 Mass. 450; *Taunton Bank* v. *Richardson*, 5 Pick. 430.

In *Lane* v. *Stewart*, 20 Maine 98, at the time of the indorsement of the notes declared on, the defendant said, if Sargent the maker did not pay the notes when due, he would; and after they became due, and when payment was demanded of the defendant, the indorser, he requested the plaintiff to sue the makers. This was held sufficient. The court there say, " It has been decided that parol testimony to prove a waiver does not contradict the written contract between the indorser and holder; and that a promise to pay if not paid by the other parties when due, made by an indorser at the time of indorsing, may be regarded as a waiver of a demand upon the maker." *Boyd* v. *Cleveland*, 4 Pick. 552.

This case presents points of resemblance to the one before us; and there can be no doubt upon the authorities, that the evidence in the case proved a waiver of the demand and notice upon the defendant; and that an action may be maintained against him upon his liability as indorser, as if such demand and notice had been given by the plaintiff. *Whitney* v. *Abbott*, 5 N. H. 397; *Otis* v. *Hussey*, 3 do. 347; *Ladd* v. *Kenney*, 2 do. 340; *Baker* v. *Parker*, 6 Pick. 81.

It appears very distinctly from the case, that the conversation showing the contract of waiver, in part took place after the indorsement and delivery of the note to the plaintiff were complete; and consequently the case is not embarrassed by any question as to the competency of parol contemporaneous evidence varying or affecting the written contract.

It is also well settled that in an action against an indorser, the allegation of demand and notice is proved by evidence that the defendant waived it. 2 Starkie's Ev. 274; *Taunton Bank* v. *Richardson*, 5 Pick. 436; *Lane* v. *Steward*, 20 Maine 98.

Hibbard *v.* Russell.

Another question arises upon the rejection of evidence offered by the defendant, as to whether the witness who testified to the conversation between the parties in 1842, understood that Russell intended to pay the note.

The witness had detailed with a good degree of minuteness, the conversation between them, in which the defendant was represented as saying, that he was good for the note, or had got it to pay, using one or the other of those expressions.

In one aspect this question resembles one decided at this term in *Braley* v. *Braley* [See *post* p. 426]; where it was held, that if a witness testify to what was said, he shall not be permitted to testify as to what he understood to be meant by the language used. The inference from the words used, was for the jury to make; who might consider the words in connection with the attending circumstances. It was not a witness' province to give any opinion on such matters, since he could have in general no better means of forming one than the jury might have furnished to them. So that if the object of the inquiry was, as it seemed to be, to draw forth the witness' opinion of the construction that ought to be given to the defendant's language, the question was an improper one. If however the inquiry was whether the witness really supposed the defendant intended to do what his words might constitute a promise on his part to do, the irrelevancy of the evidence is obvious. Any opinion of the witness on such a subject, would hardly be considered as entitled to much consideration as evidence of the secret purposes of the defendant, while these, if they could be proved, would not be regarded, if they were opposed to the just import and meaning of the language conveying a promise.

The ruling of the court was correct upon this head, and consequently there must be

*Judgment on the verdict.*